# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:21-CV-00626-GCM-DSC

| | |
|---|---|
| **AISLIN K GRAUPENSPERGER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| | ) |
| **MINNESOTA LIFE INSURANCE** | ) |
| **COMPANY et. al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on Defendant Minnesota Life Insurance Company's "Motion to Dismiss" (document #10) and the parties' briefs and exhibits.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that the Motion be <u>granted</u> as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This action is brought pursuant to 29 U.S.C. § 1132(a)(1)(B) *et. seq.*, of the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff seeks benefits under a group life insurance policy issued by the Defendant insurer. Taking the facts of the Complaint as true, Noah Spangler was employed by Intel Corporation, a California-based company. Spangler was

enrolled in Group Life Insurance Policy number 34112-G (the "**Policy**") with Minnesota Life

that funded benefits under the employee welfare benefit plan (the "**Plan**") for participating

employees. The Plan was sponsored by Intel and governed by ERISA. The Policy provides that

coverage terminates at the end of the month the employee leaves Intel. The Policy allows for a

conversion period where the employee has thirty-one days to apply for an individual policy and

pay the first premium to maintain coverage.

Spangler left the company on October 15, 2020. He passed away on December 8, 2020.

Plaintiff, Spangler's sister, submitted a claim for life insurance plan benefits under the Policy.

Defendants denied the claim and Plaintiff appealed. Defendants also denied her claim on appeal.

Plaintiff brought this action in Mecklenburg County Superior Court. Pursuant to 28 U.S.C. §§

1331, 1332, 1441, and 1446, Defendant removed the case to the United States District Court for

the Western District of North Carolina.

## II. DISCUSSION

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded

allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs.,

Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  The plaintiff's "[f]actual allegations must be

enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 555 (2007).  "[O]nce a claim has been stated adequately, it may be supported by showing

any set of facts consistent with the allegations in the complaint." Id. at 563.  A complaint attacked

by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to

relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly,

550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark [] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327

(1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490 U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 Fed. Appx. 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

"A civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 USCS § 1003(a)] and not exempt under section 4(b) [29 USCS § 1003(b)]." 29 U.S.C. § 1144(a). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has connection with or reference to such a plan." Shaw v. Delta Air Lines, 463 U.S. 85, 96 (1983). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004).

"ERISA plans are contractual documents which, while regulated, are governed by established principles of contract and trust law." Haley v. Paul Revere Life Ins. Co., 77 F.3d 84 (4th Cir. 1996) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989)). "While a court should be hesitant to depart from the written terms of a contract under any circumstances, it is particularly important in a case involving ERISA, which places great emphasis upon adherence to the written provisions in an employee benefit plan." Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 56 (4th Cir. 1992). "As with all contracts, the goal of construction is to arrive at the intent

of the parties when the policy was issued." Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 505, 246 S.E.2d 733, 777 (1978). "It is the general rule that where a provision in a policy of insurance is susceptible of two interpretations, when considered in the light of the facts of the case, one imposing liability, the other excluding it, the provision will be construed against the insurer." Mills v. State Life & Health Ins. Co., 261 N.C. 546, 553, 135 S.E.2d 586, 590 (1964) (quoting Roach v. Pyramid Life Ins. Co., 248 N.C. 699, 109 S.E.2d 823 (1958)).

"[A]mbiguity in the terms of an insurance policy is not established by the mere fact that the plaintiff makes a claim based upon a construction of its language which the company asserts is not its meaning." Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). "[I]f the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not under a guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." Woods, 246 S.E.2d at 777. "If no definition [of a term] is given, non-technical words are to be given their meaning in ordinary speech, unless a context clearly indicates another meaning was intended." Id.

In her Complaint, Plaintiff alleges "[t]his action is brought pursuant to . . . the Employee Retirement Income Security Act of 1974 (ERISA)." There is no dispute that ERISA governs the policy. ERISA provides a civil remedy for the recovery of benefits under insurance policies such as the one here. Therefore, the state law cited by Plaintiff is preempted by ERISA.

When viewing the Complaint in the light most favorable to Plaintiff, she fails to state a claim upon which relief can be granted. Spangler was not entitled to benefits under the Policy at the time of his death. The only reasonable interpretation of "grace period" under the Policy is that it refers to the time in which an overdue premium may be paid to avoid cancellation.

Although the Policy does not define the term "grace period," it consistently uses "grace period" to refer to the time when late premium payments will be accepted. The Policy does not label the thirty-one day conversion period as a "grace period." In fact, it explicitly calls it a "31-day period for conversion." In discussing the conversion right, the Policy expressly states, "[n]othing contained herein will be construed to continue any insurance beyond the 31-day period provided in this certificate." The Policy also clearly states that "[y]ou convert your insurance by applying for an individual policy and paying the first premium within thirty-one days after your group insurance terminates." For Spangler to be entitled to death benefits, he would have had to apply for an individual policy within thirty-one days after his insurance terminated. This claim fails since Spangler did not apply for an individual policy.

Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted.

## III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendants Minnesota Life Insurance Company's "Motion to Dismiss" (document #10) be **GRANTED**.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th

Cir. 1989).   Moreover, failure to file timely objections will also preclude the parties from raising

such objections on appeal.  Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316;

Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766

F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the

parties' counsel and to the Honorable Graham C. Mullen.

**SO ORDERED AND RECOMMENDED.**

Signed: April 18, 2022

David S. Cayer
United States Magistrate Judge